IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**WALMART INC. and WAL-MART
STORES ARKANSAS, LLC**                                              **PLAINTIFFS**

**V.**                             **CASE NO. 5:24-CV-5065**

**REDDY ICE CORPORATION**                                           **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Plaintiffs Walmart Inc. and Wal-Mart Stores Arkansas, LLC (together, "Walmart") brought this suit seeking indemnification and contribution from Defendant Reddy Ice Corporation for a settlement Walmart entered regarding a slip-and-fall that occurred in one of its stores after a Reddy Ice freezer located in the store leaked.

Now before the Court are the parties' cross-motions for summary judgment. Reddy Ice filed its Motion for Summary Judgment (Doc. 16) in September 2024, and Walmart filed its Motion for Summary Judgment (Doc. 31) in January 2025. Both Motions are ripe for decision.[1] For the reasons stated herein, Reddy Ice's Motion for Summary Judgment (Doc. 16) is **DENIED** and Plaintiffs' Motion for Summary Judgment (Doc. 31) is **GRANTED**.

---

[1] Additionally, the Court has considered: Reddy Ice's Memorandum Brief in Support of its Motion for Summary Judgment (Doc. 17) and Statement of Facts (Doc. 18); Walmart's Response in Opposition (Doc. 22) and Statement of Facts (Doc. 23); Reddy Ice's Reply (Doc. 26); Walmart's Memorandum Brief in Support of its Motion for Summary Judgment (Docs. 32 (redacted) & 34 (unredacted)) and Statement of Facts (Docs. 33 (redacted) & 35 (unredacted)); Reddy Ice's Response in Opposition (Doc. 38) and Statement of Facts (Doc. 39); and Walmart's Reply (Doc. 43).

## I. BACKGROUND

### A. Supplier Agreement

The facts in this case are largely undisputed. In late 2013, Reddy Ice and Walmart entered into a Walmart Grocery Supplier Agreement, contracting for Reddy Ice to provide bagged ice for sale in Walmart's stores. (Doc. 18, ¶¶ 2, 3).

Included in the Supplier Agreement was an indemnification provision, which reads in relevant part:

> 14. INDEMNIFICATION. [Reddy Ice] shall protect, defend, hold harmless and indemnify [Walmart] . . . from and against any and all lawsuits, claims, demands, actions, liabilities, losses, damages, costs and expenses (including attorneys' fees and court costs), regardless of the cause or alleged cause thereof, and regardless of whether such matters are groundless, fraudulent or false, arising out of any actual or alleged:
>
> . . .
>
> (b) [I]njury to any person, . . . by whomsoever suffered, resulting or claimed to result in whole or in part from any actual or alleged use of or latent or patent defect in, the Merchandise, including but not limited to: (i) any actual or alleged failure to provide adequate warnings, labelling or instructions; (ii) any actual or alleged improper construction or design of the Merchandise; or (iii) any actual or alleged failure of the Merchandise to comply with specifications or with any express or implied warranties of Supplier.
>
> . . .
>
> (d) Act, activity or omission of [Reddy Ice] or any of its employees, representatives or agents, including but not limited to activities on [Walmart's] premises and the use of any vehicle, equipment, fixture or material of [Reddy Ice] in connection with any sale to or service for [Walmart]; and
>
> (e) Any installation or display by [Reddy Ice] of Merchandise covered by this [Agreement].

(Doc. 42, p. 4). The Agreement defines "Merchandise" as "all products, goods, materials, equipment, articles, and tangible items supplied by [Reddy Ice] to [Walmart] within the

Territory, and all packaging, instructions, warnings, warranties, advertising and other services included therewith." *Id.* at p. 2.

### B. The Slip-And-Fall by The Freezer

Reddy Ice sells bagged ice from self-service freezers at various retailers, including the Walmart store in Pocahontas, Arkansas where the injury occurred. On June 27, 2016, Melissa Foster slipped and fell at the Pocahontas Walmart when she stepped on a wet floormat in front of the Reddy Ice freezer. (Doc. 18, ¶ 18). Approximately two hours before this occurred, a representative from Reddy Ice's independent co-packer, Watson Ice Company, LLC, had delivered ice to the freezer; he did not observe any water leaking from the freezer display at that time and did not receive reports of leaking water from Walmart personnel until after the fall. *Id.* at ¶¶ 15–17. Walmart contends its employees did not discover the water until after Ms. Foster's fall. *Id.* at ¶ 21.

After the fall, Walmart contacted Reddy Ice, and Reddy Ice sent Watson Ice to inspect the freezer. *Id.* at ¶ 22. The Watson Ice representative arrived later that day and determined that the freezer's heater, which allows defrosted liquid to evaporate, had stopped working. *Id.* at ¶ 23. Because the heater was broken the condensation accumulated until it overflowed from the freezer's interior retention pan. *Id.* at ¶¶ 24, 25. According to Watson Ice's representative, this was a "one off" incident. *Id.* Watson Ice repaired the heater, and the freezer resumed functioning normally. *Id.* at ¶ 26; Doc. 33, ¶ 12.

Reddy Ice owned the freezer display at issue. (Doc. 39, ¶ 4). It had recently refurbished the freezer at one of its plants; it then instructed Watson Ice to install the freezer in the Pocahontas Walmart approximately two-months before the slip-and-fall.

(Doc. 33, ¶ 4). Pursuant to its Independent Co-Packer Agreement with Reddy Ice, Watson Ice was also responsible for manufacturing, bagging, labelling, and delivering ice to the Pocahontas Walmart, as well as servicing and repairing the Reddy Ice freezer. (Doc. 18, ¶¶ 9, 10). Walmart, however, maintained and managed the upkeep of the floor mat located in front of the freezer. *Id.* at ¶ 14. In the months between the freezer's installation and the slip-and-fall, there were no reported or observed instances of water leaking from the freezer by Walmart or Watson Ice personnel. *Id.* at ¶¶ 12, 13.

### C. Underlying Lawsuit and Walmart's Settlement

Approximately two years after Ms. Foster's fall, she and her husband filed a negligence action against Walmart and Reddy Ice in Randolph County Circuit Court. (Doc. 18, ¶ 27; Doc. 18-10). Despite Walmart's repeated requests, Reddy Ice denied any obligation to defend or indemnify Walmart. (Doc. 33, ¶¶ 14–16). As against Walmart, the Fosters alleged liability for failure to reasonably maintain the premises in a safe condition for its patrons. (Doc. 18, ¶ 30). The allegations included failure to notify Reddy Ice of the leak, failure to properly maintain the floormat in front of the freezer, failure to place an appropriate warning sign, and failure to monitor or inspect the floor by the freezer, which allowed the floormat to become wet causing Ms. Foster to slip. (Doc. 18, ¶ 31).

As against Reddy Ice, the Fosters alleged that the floormat "was saturated, at least in part, due to water leaking from the Reddy Ice Machine." (Doc. 33, ¶ 8). According to the Fosters, Reddy Ice was negligent, *inter alia*, in "failing to properly maintain the Reddy [freezer] at issue and allowing it to leak water and/or other liquid onto the floor"; in "failing to warn" Ms. Foster of the dangerous condition of concealed water leaking from the Reddy freezer; in failing "to train [Reddy's] employees to properly maintain and/or repair its

4

machines to prevent leaks"; and, in failing to know that its "Reddy [freezer] was defective and in need of repair." (Doc. 33, ¶ 10). Reddy Ice moved for summary judgment, the Fosters did not object, and the court granted the motion, dismissing Reddy Ice with prejudice. (Doc. 18, ¶¶ 32, 33). The court's grant of summary judgment did not include an opinion but did note "Plaintiff's decision to not challenge Reddy Ice's motion." (Doc. 33, ¶ 21; Doc. 18-12). Additionally, in the action below, Walmart filed a crossclaim against Reddy Ice, seeking contribution and indemnification. (Doc. 33, ¶ 18; Doc. 33-3, pp. 6–8). Reddy Ice filed a motion to dismiss, which the state court denied. (Doc. 33, ¶¶ 17–20).

Following the grant of summary judgment to Reddy Ice in the state court, Walmart, the Fosters, and Reddy Ice (which was still a party due to pendency of Walmart's crossclaim) engaged in confidential mediation. (Doc. 18, ¶ 34). Walmart ultimately settled the lawsuit against it, and the Fosters executed a confidential release. *Id.* at ¶ 35. The Settlement Agreement defined "Released Parties" to include Walmart and expressly exclude Reddy Ice. *Id.* at ¶ 36. After the settlement, Walmart filed a motion to nonsuit its crossclaim against Reddy Ice, deciding to pursue its claim for indemnification in a separate suit. The court granted the motion to nonsuit without prejudice, observing that the order did not preclude Walmart's right to refile its claims against Reddy Ice. (Doc. 33, ¶ 22). Due to the nonsuit, Reddy Ice's motion for summary judgment on the crossclaim was not addressed by the state court. (Doc. 39, ¶ 18).

Walmart brought this suit against Reddy Ice seeking to recover all or part of its settlement amount and its attorneys' fees through theories of contractual indemnity, equitable indemnity, and/or contribution. *See* Doc. 3. Reddy Ice moved for summary

5

judgment on Walmart's contractual indemnity and contribution claims. *See* Doc. 16. And Walmart moved for summary judgment on its contractual indemnity claim. *See* Doc. 31.

## II. LEGAL STANDARD

A party moving for summary judgment must establish both the absence of a genuine dispute of material fact and its entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Nat'l Bank of Commerce of El Dorado v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999). The same standard applies where, as here, the parties have filed cross-motions for summary judgment. Each motion should be reviewed in its own right, however, with each side "entitled to the benefit of all inferences favorable to them which might reasonably be drawn from the record." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983); *see Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1998). For there to be a genuine issue of material fact, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III. DISCUSSION

The Court will first discuss Walmart's contract claim. And because it finds this claim to be dispositive as to the parties' rights in this case, it only briefly addresses Walmart's other claims.

### A. Contractual Indemnification

The parties disagree over whether Reddy Ice is contractually required to indemnify Walmart for its settlement with the Fosters under the terms of the Supplier Agreement.

Broadly speaking, Reddy Ice argues that Walmart's liability in the underlying suit "was predicated on its independent . . . duty as a premises owner," and Reddy Ice could not be at fault for Walmart's negligence in maintaining a safe premises, particularly in light of Reddy Ice's success on summary judgment in the state court. (Doc. 38, p. 11). Walmart objects to Reddy Ice's framing and argues that Reddy Ice's negligence liability is irrelevant because Reddy Ice contractually agreed to indemnify Walmart for "any and all lawsuits [and] claims" "regardless of the cause or alleged cause" that "aris[e] out of any actual or alleged" injury to a person caused "in whole or in part" by a latent defect in Reddy Ice's merchandise, any acts or omissions by Reddy Ice's representatives, and/or any installation or display of Reddy Ice's merchandise.

### 1. Whether Walmart is Entitled to Indemnification for Its Own Negligence

The Court first addresses Reddy Ice's central contention that the law does not require an indemnitor to indemnify losses resulting from an indemnitee's own negligence. According to Reddy Ice, Walmart was solely responsible for maintaining its store in a reasonably safe condition for its shoppers.

The Supplier Agreement here provides that all disputes shall be governed by Arkansas law. In Arkansas, the rules of contract interpretation generally apply to indemnity agreements. *Pickens–Bond Const. Co. v. N. Little Rock Elec. Co.*, 249 Ark. 389, 392 (1970) (citations omitted). Under Arkansas law, an indemnitor's intention "to obligate itself to indemnify" the indemnitee's "own negligence must be expressed in clear and unequivocal terms and to the extent that no other meaning can be ascribed." *Ark. Kraft Corp. v. Boyed Sanders Const. Co.*, 298 Ark. 36, 38–39 (1989) (citation omitted). Though this does not require any particular words, "the liability of an indemnitor for the negligence

of an indemnitee is an extraordinary obligation to assume, and [courts] will not impose it unless the purpose to do so is spelled out in unmistakable terms." *Id.* at 39 (citations omitted).

Two cases from the Arkansas Supreme Court provide contour as to what constitutes sufficiently clear and unambiguous language. In *Pickens-Bond Construction Co. v. North Little Rock Electric Co.*, the court held that an agreement obligating indemnification for "damage or injury *from whatever cause*" "clearly and unequivocally" triggered indemnification even where the indemnitee's negligence contributed to the injury, "unless the [indemnitee's] active negligence was the sole proximate cause." 249 Ark. at 402. In contrast, the court in *Arkansas Kraft Corp. v. Boyed Sanders Construction Co.* distinguished *Pickens-Bond* and held that an agreement requiring indemnification for "any and all liabilities or claims for injuries or damages to any person or property" was "simply not so broad as to clearly and unequivocally show the indemnitor's intention to obligate itself to indemnify the indemnitee for the indemnitee's own negligence." 298 Ark. at 39.

The Eighth Circuit has also spoken on this issue. In *Wal-Mart Stores, Inc. v. RLI Insurance Co.*, 292 F.3d 583 (8th Cir. 2002), the Eighth Circuit held that an agreement to indemnify Walmart for "claims resulting '*in whole or in part*' from any actual or alleged defect in the [product]" was "very broad" and clearly and unambiguously covered claims even where Walmart (the indemnitee) had been negligent. *Id.* at 588. Though the Eighth Circuit did not speak to cases where the indemnitee was the *sole* cause of injury, this language seems to align with the language in *Pickens-Bond*.

8

Most recently, the Honorable Robert T. Dawson in this court determined that language—nearly identical to the language at issue in this case—did "not require Black and Decker [the indemnitor] to defend or indemni[f]y Wal-Mart [the indemnitee] for losses incurred as a result of acts or omissions that [were] solely attributable to Wal-Mart." *Wal-Mart Stores, Inc. v. Black & Decker (U.S.), Inc.*, 2009 WL 2524570, at *5 (W.D. Ark. Aug. 17, 2009). There, the court distinguished *Chevron U.S.A., Inc. v. Murphy Exploration & Production Co.*, 356 Ark. 324, 313 (2004), in which the agreement required indemnity for loss "resulting from or arising out of any liability caused by or connected with the . . . sole negligence of [the indemnitee]." *Black & Decker,* 2009 WL 2524570, at *3. It was unclear, however, whether Judge Dawson would have found the language in *Black & Decker* sufficient to obligate Black & Decker to indemnify Walmart for an injury caused, *in part*, by Walmart's negligence,[2] as he likened the language at issue to both *Pickens-Bond* (sufficient to require indemnification for own negligence, but not where sole cause) and *Arkansas Kraft* (insufficient to require indemnification for own negligence). *Black & Decker*, 2009 WL 2524570, at *3. Indeed, such a finding was not necessary in *Black & Decker* because the claims at issue "relate[d] only to the independent misconduct" of the indemnitee, i.e., Walmart's negligence alone. *Id.* at *5.

Here, the language certainly surpasses that in *Arkansas Kraft*, but, like in *Black & Decker*, it does not go so far as to clearly and unambiguously require indemnification

---

[2] *Black & Decker* uses the phrases "sole negligence" and "own negligence" almost interchangeably. As evidenced by its analogizing to *Pickens-Bond* and the factual distinctions it makes with *RLI*, it is clear that Judge Dawson held only that the language there was insufficient to require indemnification for harm caused by Walmart's *sole* negligence. *See* 2009 WL 2524570, at *4 ("Unlike *RLI*, it is *only* the acts or omissions of Walmart, rather than those of Black & Decker, that are currently at issue." (emphasis added)).

9

where the loss arises solely from Walmart's acts or omissions. Rather, the indemnity agreement at issue in this case aligns with *Pickens-Bond* and *RLI*. The agreement here required indemnification for "any and all lawsuits . . . regardless of cause or alleged cause," like the "from whatever cause" language in *Pickens-Bond*. Doc. 18, ¶ 6; *see Pickens-Bond*, 249 Ark. at 402. The language in the instant case also mirrors that in *RLI*, both of which require indemnification for claims resulting "in whole or in part" from product defects. Doc. 18, ¶ 6; *see RLI*, 292 F.3d at 588.

Accordingly, the Court holds that the language in the Supplier Agreement at issue in this case—like that in *Pickens-Bond*—requires indemnification for Walmart's own negligence, unless Walmart's negligence was the *sole* cause of the loss.

### 2. Whether Walmart is Entitled to Indemnification on the Undisputed Facts

The next question is whether the indemnification provision—as applied to the undisputed facts—obligates Reddy Ice to indemnify Walmart for losses arising out of the Fosters' lawsuit. Walmart asserts that Reddy Ice has a duty to indemnify under subsection (b) (latent or patent defect), subsection (d) (act, activity, or omission), and subsection (e) (installation or display) of the agreement. Reddy Ice contests Walmart's ability to rely on any of these provisions as grounds for indemnification. Before addressing whether these contractual provisions support indemnification, the Court will first frame the relevant inquiry by looking more closely at *RLI* and *Black & Decker*.

#### i. *RLI* and *Black & Decker*

In *RLI*, the Eighth Circuit held Walmart (the indemnitee) and its insurer were entitled to summary judgment because the indemnitor in that case, Cheyenne, had made a "valid promise to indemnify Walmart for claims arising from the halogen lamps" that it

supplied to Walmart. 292 F.3d at 587. There, the parties' agreement contained two indemnification provisions that read as follows:

> Cheyenne shall protect, defend, hold harmless and indemnify Wal–Mart from and against any and all claims and actions arising out of any actual or alleged death or injury to any person or other damage or loss, by whomsoever suffered, resulting or claimed to result in whole or in part from any actual or alleged defect in such merchandise . . . .
>
> Indemnification; Cheyenne agrees to save Wal–Mart harmless and indemnified from all claims, liability, loss, damage and expense, including reasonable attorneys' fees, sustained from the purchase, use or sale of any goods or from the breach of any of the guaranties or warranties hereunder and such obligations shall survive acceptance of the goods and payments therefor by Wal–Mart.

*Id.* at 587–88 (cleaned up). The court held that Cheyenne had clearly "promised to indemnify Wal-Mart for any liability or loss resulting from Wal-Mart's sale of its lamps," and Walmart's having to pay a settlement where a plaintiff was allegedly injured by a defective exploding lamp fell within this agreement. While the court there stated "[a]ny possible negligence by Wal-Mart does not protect Cheyenne from its contractual promise to indemnify Wal-Mart," the opinion does not make clear whether Walmart was in fact negligent and, if it was, to what degree.

In *Black & Decker*, Judge Dawson held as a matter of law that Black & Decker was not required to indemnify Walmart because the injury resulted from Walmart's sole acts or omissions. 2009 WL 2524570, at *5. There, a couple brought the underlying suit against Walmart and Black & Decker for injuries received from an allegedly defective Black & Decker grinder purchased at Walmart. *Id.* at *2. Black & Decker settled with the underlying plaintiffs, resolving the couple's claims against Black & Decker but not Walmart. *Id.* The underlying plaintiffs in *Black & Decker* then amended their complaint to claim that Walmart had violated the Texas Deceptive Trade Practice Consumer Protection

11

Act when it sold them the grinder, alleging "Wal-Mart sold the grinder . . . as 'new'" when it "was actually a 'returned' item to Defendant Wal-Mart and had been disassembled then re-assembled post-manufacturing." *Id.* The amended complaint further stated, "The claims by Plaintiffs are intended to be limited to only those resulting from independent actions and/or inactions by Defendant Wal-Mart." *Id.*

Judge Dawson held that Black & Decker was not obligated to indemnify Walmart because the allegations in the operative complaint "relate[d] only to the independent misconduct of Wal-Mart." *Id.* at *5. In so holding, Judge Dawson distinguished the case from *RLI*, explaining that in *RLI* "Wal-Mart's loss would have necessarily been caused, at least 'in part,' by the vendor's acts or omissions" due to the nature of the alleged design defect. *Id.* at *4. "Unlike *RLI*," Judge Dawson stated, "it [was] only the acts or omissions of Wal-Mart, rather than those of Black & Decker, that [were] at issue." *Id.*

ii. Framing the Relevant Inquiry

Reddy Ice argues that *Black & Decker* is factually analogous, comparing the last-standing deceptive trade practices claim against Walmart in *Black & Decker* to the remaining premises liability claim against Walmart in this case. Reddy Ice contends that regardless of where the leak came from, it does not "change the common law duty owed by Walmart alone." (Doc. 17, p. 9). That is, it was Walmart's failure to ameliorate the danger posed by the leak that established premises liability—a failure beyond Reddy Ice's control. Further, Reddy Ice asserts that Reddy Ice's "non-negligent (as adjudicated below) actions or omissions cannot form the basis for Walmart's liability as a matter of law," *id.* at p. 10, due to collateral estoppel, (Doc. 26, p. 4).

12

Conversely, Walmart factually distinguishes the instant case from *Black & Decker*, explaining that, there, "the loss for which the indemnitee . . . sought indemnification could <u>only have been caused</u> by the indemnitee." (Doc. 34, p. 12). That is, not only could Black & Decker have not been liable for the deceptive trade practices act claim, but the injury was in no way attributable to Black & Decker (i.e., being sold a returned, reassembled, and repackaged grinder as "new" in violation of the deceptive trade practices act) because Black & Decker played no part in the post-manufacture return and reselling of its grinder. Whereas here, Walmart argues, the undisputed facts "establish clearly that a defect in Reddy's freezer caused, or contributed to, the loss for which indemnification is sought." (Doc. 34, p. 15). Lastly, Walmart argues the grant of summary judgment to Reddy Ice in the underlying action is immaterial because "[n]egligence liability is not the sole condition triggering Reddy's duty to indemnify Walmart." *Id.* at p. 16.

To start, the Court agrees with Walmart that *Black & Decker* is factually distinct because, there, Walmart's actions occurred *post-manufacture* and caused a deceptive trade practices injury which could only be attributed to Walmart, whereas here Walmart's alleged negligence was its failure to mitigate a risk/danger that Reddy Ice's Merchandise created.

Moreover, Reddy Ice's focus on Walmart's independent duty and the theory of liability in the underlying suits is misplaced. The action here is not confined to one of contribution among joint tortfeasors. Rather, the issue here—based on the caselaw and the contractual language—is whether Walmart's loss is attributable to Reddy Ice under the terms of the agreement, not simply the tort theory. *Id.* As Walmart states, "An indemnitee's right of recovery is not conditioned on the underlying plaintiff making, or

13

even having, a colorable claim against both the indemnitor and indemnitee." (Doc. 34, p. 16). "[A]n indemnitor's <u>fault</u> in contributing to a loss can exist without <u>liability</u> for the loss; being the alleged cause of, or at fault for, a loss is not the same as being liable for the loss." *Id.*

Likewise, the fact the Fosters' negligence claim against Reddy Ice was dismissed on summary judgment is not dispositive. Neither the underlying motion nor the state court's order on summary judgment address whether the injury—and thus, Walmart's loss—was attributable to Reddy Ice under the indemnification agreement. *See* Doc. 22-4, pp. 4, 6–7. Instead, Reddy Ice's motion in the underlying action argued that it had no *duty* to the Fosters and that it did not commit negligent conduct, much like its misplaced argument here. Additionally, collateral estoppel does not bar this suit. The underlying suit adjudicated Reddy Ice's negligence to the Fosters, while this case adjudicates whether Walmart's loss is attributable to Reddy Ice under the terms of their contractual agreement.

Thus, the relevant inquiry here is whether Walmart's losses arise out of any actual or alleged: *injury resulting in whole or in part from a patent or latent defect* in Reddy Ice's Merchandise (subsection (b)); *act, activity, or omission* by Reddy Ice (subsection (d)); or *installation or display* of Reddy Ice's Merchandise (subsection (e)).

iii. Applying the Contractual Basis for Indemnification

First, the Court finds that "Merchandise" includes the subject freezer along with the bags of ice. *See* Doc. 42, p. 2. The Supplier Agreement defines "Merchandise" to include "all products, goods, materials, equipment, articles, and tangible items supplied by [Reddy Ice] to [Walmart]." *Id.* Certainly, a freezer owned, transported, installed, and maintained inside the Walmart store by Reddy Ice for the purpose of storing and displaying Reddy

Ice's goods (i.e., ice) constitutes equipment or, at the very least, a tangible item supplied by Reddy Ice to Walmart.

Second, the Court finds that subsection (e) is dispositive here because, based on the undisputed facts, Walmart's loss (i.e., paying the settlement amount to the Fosters) arose out of Reddy Ice's display of its Merchandise (i.e., the ice and freezer). It is undisputed that the water in which Ms. Foster slipped originated from Reddy Ice's freezer after the heater malfunctioned, causing the condensation to accumulate and overflow. And though Reddy Ice argues "the freezer is not a display that caused Mrs. Foster to fall," (Doc. 38, p. 9), the plain language compels a different conclusion. *See Display*, Merriam-Webster, https://www.merriam-webster.com/dictionary/display [https://perma.cc/5WVA-QL22] (last visited March 3, 2025) (defining "display" as "a setting or presentation of something in open view"); *see also Display*, Cambridge Dictionary, https://dictionary.cambridge.org/dictionary/english/display [https://perma.cc/KCZ8-NUQX] (last visited March 3, 2025) (defining "display" as "a collection of products or objects arranged for people to look at or buy in a store" and providing examples such as a display window, shelf, or counter).

The Court does not see how a branded case placed in the store by a Reddy Ice representative for the purpose of advertising, storing, and exhibiting the bagged ice would not constitute a display. Thus, subsection (e) triggers indemnification in this circumstance as a matter of law.[3]

---

[3] Because subsection (e) is dispositive, the Court will not address Walmart's alternative arguments under subsections (b) and (d).

Reddy Ice argues this is an "expansive and flawed interpretation of this provision" that leads to absurd results by "shift[ing] the liability belonging only ever to Walmart as a premises owner to those that do business with Walmart."[4] (Doc. 26, p. 6 n.4). The Court disagrees—Reddy Ice signed an agreement to indemnify Walmart "from and against any and all . . . losses . . . regardless of the cause or alleged cause thereof . . . arising out of any actual . . . display by [Reddy Ice] of Merchandise." (Doc. 42, p. 4). Because it is undisputed that the freezer's malfunctioning heater caused a leak that resulted in Ms. Foster's fall, there is no genuine issue of material fact whether Walmart's loss arose out of the display of Reddy Ice's Merchandise. Accordingly, Reddy Ice is required to indemnify Walmart for its loss under subsection (e) of the agreement as a matter of law, and Walmart's Motion for Summary Judgment (Doc. 31) is **GRANTED**. It necessarily follows that Reddy Ice has not shown as a matter of law that it has no duty to indemnify, so Reddy Ice's Motion for Summary Judgment (Doc. 16) is **DENIED**.

### B. Contribution and Equitable Indemnity

Alternatively, Walmart brings claims for contribution and equitable indemnity. As Walmart correctly notes in its Reply brief, summary judgment in Walmart's favor on the contractual indemnity claim makes Walmart's other causes of action moot. (Doc. 43, pp.

---

[4] Reddy Ice argues such absurd results may include requiring indemnification where "Tostitos had a large cardboard display at a Walmart store, and the display fell over and was left on the ground so long by Walmart employees that an unsuspecting customer rounded the corner of an aisle and tripped over it." (Doc. 38, p. 9). Without deciding whether such a hypothetical would compel indemnification under the instant agreement—Walmart argues it does—the Court finds the hypothetical flawed. A more analogous hypothetical would be one in which the Tostitos display *broke* causing part of it to lay the in the aisle and trip a customer. Under this modified hypothetical and the instant Supplier Agreement, Tostitos would be required to indemnify Walmart.

2–3). Because the Court has granted Walmart's Motion for Summary Judgment, it will not address its alternative causes of action.

## IV. CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED** that Walmart's Motion for Summary Judgment (Doc. 31) is **GRANTED**, and Reddy Ice's Motion for Summary Judgment (Doc. 16) is **DENIED**. Accordingly, Reddy Ice must indemnify Walmart for its loss in the underlying suit. Walmart should file its motion for attorneys' fees, if sought, within fourteen days from the entry of this Order; Reddy Ice will then have fourteen days to respond.

The Court's findings and rulings must be reduced to a judgment, which the Court will file contemporaneously with this Memorandum Opinion and Order. While the settlement amount and the amount Walmart paid in attorneys' fees and costs in the underlying suit is confidential, the amounts are undisputed.[5] See Doc. 35, pp. 7–8; Doc. 39, pp. 9–10. The Court will file a sealed judgment that includes the specific amounts owed to Walmart by Reddy Ice in this action as well as an unsealed judgment to the public docket that redacts the specific amounts.

**IT IS SO ORDERED on** this 6th day of March, 2025.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

[5] Though Reddy Ice "disputes that it is legally responsible" for the legal fees and costs, it does not dispute that "Walmart paid [these] sums . . . purportedly as legal fees and costs." The indemnification agreement covers, *inter alia*, "losses, damages, costs and expenses (**including attorneys' fees and court costs**)." (Doc. 42, p. 4 (emphasis added)). In light of the Court's findings in this Order, Reddy Ice's argument that it is not legally responsible for these amounts is a nonstarter.